UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                             :

UNITED STATES OF AMERICA           :

                                   :

            -v.-           :        09 Cr. 581 (WHP)

                                   :

PAUL M. DAUGERDAS           :

                                   :

           Defendant.      :
------------------------------------------------------------- x
                                   :

ELEANOR DAUGERDAS,         :

                                   :

           Petitioner      :
------------------------------------------------------------- x
                                   :

PAUL DAUGERDAS, as Trustee,    :

                                   :

           Petitioner      :
------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE THIRD-PARTY PETITIONS OF PAUL DAGUERDAS AND ELEANOR DAUGERDAS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

Kiersten A. Fletcher
Assistant United States Attorney
- Of Counsel -

## TABLE OF CONTENTS

BACKGROUND…………………………………………………………………………..1

    I.     The Criminal Case…………………………………………………………..…1

    II.    The Initial Preliminary Order of Forfeiture and Ancillary Proceeding……………….3

    III.   The Current Petition………………………………………………………..8

         A.  Paul Daugerdas's Petition Related to the 529 Accounts……….…..………..8

         B.  The Eleanor Daugerdas Petition…………………………………………9

ARGUMENT …………………………………………………………………………10

    I.     Applicable Law………………………………………………………………11

    II.    The 529 Petition Should be Dismissed on Standing Grounds……………………….12

         A.  Claims by Paul Daugerdas are Barred by Law of the Case…………………12

         B.  Because Paul Daugerdas is the Owner of the 529 Accounts, the 529 Petition
            Should be Dismissed……………………………………………………...13

    III.   The Eleanor Petition Should be Dismissed for Failure to Allege a Cognizable Interest
       under 853(n)(6)(A) …………………………………………………………..20

         A.   The Eleanor Petition Still Lacks Factual Allegations of Commingling………...20

         B.  The Eleanor Petition Fails to State a Claim Because All Funds Transferred From
          J&G to Daugerdas Are Proceeds of the Offense…………………………...22

         C.  Alternatively, the Eleanor Petition Should be Dismissed Because the Government
          Would Have a Superior Interest Even If the Assigned Properties Were Substitute
          Assets. …………………………………………………………………23

CONCLUSION…………………….……………………………………..…….…………25

The United States of America (the "Government"), by and through its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, and Kiersten A. Fletcher, Assistant United States Attorney, Of Counsel, respectfully submits this memorandum of law in support of its motion to dismiss the third-party petitions of Eleanor Daugerdas (the "Eleanor Petition") and Paul Daugerdas, in his purported capacity as "trustee" of certain college savings plans (the "529 Accounts") created for the benefit of his children (the "529 Petition").

For the reasons set forth in detail below, (1) the 529 Petition should be dismissed for lack of standing, because the beneficiaries of the 529 Accounts lack an ownership interest in those plans and have not asserted any claims here; and (2) the Eleanor Petition should be dismissed for failure to plausibly allege any facts supporting her conclusory allegation that the properties in the Eleanor Petition are substitute assets, and because, if they were substitute assets, her interest would have vested after the Government's interest.

## BACKGROUND

### I.    The Criminal Case

On July 1, 2013, a Grand Jury sitting in this District returned a sixth Superseding Indictment charging Paul M. Daugerdas (the "defendant" or "Daugerdas") and Denis Field with orchestrating a long-running and extremely successful tax shelter scheme (the "S6 Indictment"). More specifically, the S6 Indictment alleged that from approximately 1994 through approximately 2004, Daugerdas was the architect of a sophisticated, fraudulent tax shelter scheme that resulted in proceeds to Daugerdas and Field of at least $180 million.  *See* S6 Indictment, ¶ 108(a).  The S6 Indictment included a forfeiture allegation seeking forfeiture to the Government pursuant to, inter alia, Title 18, United States Code, 982(a)(2)(A), which provides that criminal defendants convicted of mail or wire fraud charges affecting a financial institution

1

"shall forfeit to the United States any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation."

The proof at each of Daugerdas's two criminal trials "established that all of the tax shelter fee income was the product of this scheme and that *the entirety of the tax shelter fees obtained by the Chicago office of Jenkens & Gilchrist* were generated through the criminal acts of Daugerdas and his coconspirators."  *See* Nov. 7, 2012 Order Denying *Pro-Se* Motion to Vacate at 5 (D.E. 574) (rejecting Daugerdas's August 2012 *pro se* motion to vacate a post-indictment restraining order of forfeitable assets) (hereinafter, the "November 7 Order"). Consequently, none of these funds would have been obtained "but for" the fraudulent scheme, *see United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir. 1989), and therefore are subject to seizure as the proceeds of that fraudulent scheme, *see, e.g.*, *United States v. Capoccia*, 503 F.3d 103, 117 (2d Cir. 2007); *see also* November 7 Order at 5.

On June 19, 2014, the Government moved for the entry of preliminary order of forfeiture of various assets of the defendant and the imposition of a forfeiture money judgment in the amount of $180,000,000 (the "Government's Motion") (D.E. 825).

On June 23, 2014, the defendant filed an opposition to the Government's Motion contesting the Government's assertion that the assets of the defendant were proceeds of his offenses. The defendant argued, among other things, that the Jenkens & Gilchrist ("J&G") fees paid to the defendant were first commingled with legitimate funds and therefore not traceable to proceeds.

On June 25, 2014, following Daugerdas's conviction after re-trial, the Court included in its judgment of conviction a forfeiture order in the amount of $164,737,500.  (D.E. 830).  In imposing that amount of forfeiture, the Court ruled (referring to the November 7 Order) that the

evidence presented at Daugerdas's second trial was substantially the same as the overwhelming evidence presented at his first trial, which underpinned the Court's November 7 finding that the J&G fees paid to Daugerdas were criminal proceeds. *See* June 25, 2014 Tr. at 12:8-9 (D.E. 839).

## II.    The Initial Preliminary Order of Forfeiture and Ancillary Proceeding.

On June 26, 2014, this Court entered a Preliminary Order of Forfeiture[1] (the "June 26 POF") (D.E. 836) forfeiting to the Government, *inter alia*, the defendant's interest in the following property:

a.    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 619 Cedar Point Drive, Williams Bay, Wisconsin 53191, more particularly described as a single-family home owned by PAUL DAUGERDAS and/or family members, either directly or indirectly, with the legal description of "Lots 14 and 15 in Cedar Point Subdivision, in Sections 5 and 6, Township 1 North, Range 17 East, in the Village of Williams Bay, according to the recorded plot thereof recorded in the Office of the Registrar of Deeds for Walworth County, Wisconsin" ("Williams Bay Property");

b.    Any and all United States currency, funds, or other monetary instruments on deposit at Putnam Investments, Account Number 3960-1400001511, held in the name of PAUL M. DAUGERDAS FBO NICOLE K. DAUGERDAS ("1511 Account");

c.    Any and all United States currency, funds, or other monetary instruments on deposit at Putnam Investments, Account Number 3960-0488483198, held in the name of PAUL M. DAUGERDAS FBO DANIEL W. DAUGERDAS ("3198 Account");

d.    Any and all United States currency, funds, or other monetary instruments on deposit  at Putnam Investments, Account Number 3968-0357819711, held in the name of PAUL M. DAUGERDAS FBO MICHAEL P. DAUGERDAS ("9711 Account");

e.    Any and all United States currency, funds, or other monetary instruments on

---

[1]    The June 26 POF was subsequently affirmed by the Second Circuit, *United States v. Daugerdas*, 837 F.3d 212, 218 (2d. Cir. 2016), which rejected Paul Daugerdas's commingling argument.

3

deposit at Putnam Investments, Account Number 3873-0357661803, held in the name of PAUL M. DAUGERDAS FBO ALEXANDER P. JEFFREY (the "1803 Account");

f.    Any and all United States currency, funds, or other monetary instruments on deposit at Putnam Investments, Account Number 3975-0357804838, held in the name of PAUL M. DAUGERDAS FBO ELEANOR M. DAUGERDAS (the "4838 Account");

g.    Any and all United States currency, funds, or other monetary instruments on deposit at Putnam Investments, Account Number 3975-0357820510, held in the name of PAUL M. DAUGERDAS FBO COURTNEY M. DAUGERDAS (the "0510 Account");

h.    Any and all United States currency, funds, or other monetary instruments on deposit at Putnam Investments, Account Number 3976-0357817116, held in the name of PAUL M. DAUGERDAS FBO MEGAN A. JEFFREY (the "7116 Account");

i.    Any and all United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number 03-375152, held in the name of PMD INVESTMENTS, LLC (the "PMD Fidelity Account");

j.    Any and all United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number 246-6223261, held in the name of ELEANOR SPINA DAUGERDAS TRUST U/A 05/23/85, formerly held in account number 03-315540 in the name of Eleanor Spina Daugerdas at Fidelity ("Eleanor Fidelity Account");

k.    Any and all United States currency, funds, or other monetary instruments on deposit at Smith Barney, Account Numbers 383-25091-15 and 383-47731-15, held in the name of PMD Investments LLC (the "Smith Barney Accounts");

l.    Any and all United States currency, funds, or other monetary instruments on deposit at Morgan Stanley, Account Number 06-78C3Z, held in the name of PMD Investments LLC (the "Morgan Stanley Account");

m.    Any and all United States currency, funds, or other monetary instruments on deposit at Credit Suisse, Account Number 24N-018007, held in the name of PMD Investments LLC (the "Credit Suisse Account");

n.    Any and all United States currency, funds, or other monetary instruments on deposit at Goldman Sachs & Co., Account Number 4XDG, held in the name of Eleanor L. Daugerdas (the "Goldman Sachs Account");

4

o.      Any and all United States currency, funds, or other monetary instruments on deposit at Deutsche Bank, Account Numbers 5XR-087746, 5XR-122063 and 5XR-104715, held in the name of PMD Investments LLC (the "Deutsche Bank Accounts");

p.      Any and all United States currency, funds, or other monetary instruments on deposit at Fifth Third Bank, Account Number 7233463814, held in the name of Paul M. Daugerdas By Eleanor Spina Daugerdas (the "Fifth Third Bank Account");

q.      Any and all United States currency, funds, or other monetary instruments on deposit at North Shore Community Bank & Trust Company. Account Number 0317008390, held in the name of Eleanor L. Daugerdas (the "North Shore Account");

(a-q, collectively, the "Specific Properties").

On August 29, 2014, Eleanor filed a Petition asserting an interest in some of the Specific Properties indicating her interest was superior to the Government as the Specific Properties were forfeitable as "substitute assets" of the defendant's offenses, rather than as offense property (the "Original Petition") (D.E. 853). On October 31, 2014, the Government moved to dismiss the Original Petition asserting that the Specific Properties were proceeds of the defendant's tax shelter fraud as the Court had determined in the June 26 POF and November 7 Order (the "Motion to Dismiss")(D.E. 866).

On March 20, 2017, the Court granted the Government's Motion to Dismiss and rejected the arguments set forth in the Original Petition, holding that, as previously determined by the Court, the Specific Properties were proceeds of the defendant's crime and were not substitute assets and that Eleanor Daugerdas lacked standing to challenge that finding (the "March 20 Order") (D.E. 900). Therefore, pursuant to 853(c), the Government's interest vested at the time of the defendant's commission of the criminal offense, which predated the vesting of any possible interest of Eleanor in the Specific Properties.

5

On June 13, 2018, the Second Circuit reversed the March 20 Order and remanded for further proceedings.  In so doing, the Second Circuit reiterated its earlier finding that that because all of the tax shelter fees paid to J&G "were generated through the criminal acts of Daugerdas and his coconspirators," "none of [the funds at issue] would have been obtained but for the fraudulent scheme, . . . and they are subject to seizure as 'proceeds' of the fraudulent scheme."  *United States v. Daugerdas*, 892 F.3d 545, 550 (2d Cir. 2018) (citing *Daugerdas* 837 F.3d at 218), but held that Due Process afforded Eleanor Daugerdas standing to challenge that finding.  The Second Circuit made clear that, to succeed on remand, Eleanor's petition would be required to allege facts supporting her commingling argument and noted that the Original Petition did "not include any facts indicating that commingling actually occurred."  *Id.* at 552.  The Second Circuit further noted that, "[t]he inability of Paul, who presumably had inside access to the financial practices of the law firm, to demonstrate such commingling …warrant[ed] some skepticism about whether Eleanor [could] do so," but afforded her the opportunity under Due Process.  *Id.* at 557.  Finally, the Second Circuit noted in a footnote that "the district court did not consider whether any such commingling by the firm would, as a matter of law, actually defeat a finding that Paul's law firm income constituted the proceeds of his crimes (although, in Paul's case, it found as a factual matter that such commingling had not occurred, and we affirmed)" and noted that it was "not self-evident why, if Paul's partnership compensation was entirely derived from such fees, his income could not itself be considered the proceeds of fraud" but left it to this Court to decide the issue.  *Id.* at 554 n.6.

On August 6, 2018, an Amended Preliminary Order of Forfeiture as to Certain Specific Properties was entered by the Court correcting, *inter alia*, the descriptions of certain accounts to reflect that the accounts were in fact held at Black Rock College Advantage (formerly Putnam

6

Investments) the 1511 Account, 3198 Account, 9711 Account, 1803 Account, 4838 Account,

0510 Account, 7116 Account, Smith Barney Accounts, Morgan Stanley Accounts, and the Fifth

Third Bank Account, to the following:

a.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3960-1400001511, held in the name of PAUL M. DAUGERDAS FBO NICOLE K. DAUGERDAS;

b.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3960-0488483198, held in the name of PAUL M. DAUGERDAS FBO DANIEL W. DAUGERDAS;

c.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3968-0357819711, held in the name of PAUL M. DAUGERDAS FBO MICHAEL P. DAUGERDAS;

d.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3973-0357661803, held in the name of PAUL M. DAUGERDAS FBO ALEXANDER P. JEFFREY;

e.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3975-0357804838, held in the name of PAUL M. DAUGERDAS FBO ELEANOR M. DAUGERDAS;

f.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3975-0357820510, held in the name of PAUL M. DAUGERDAS FBO COURTNEY M. DAUGERDAS;

g.  Any and all United States currency, funds, or other monetary instruments on deposit at Black Rock College Advantage (formerly Putnam Investments), Account Number 3976-0357817116, held in the name of PAUL M. DAUGERDAS FBO MEGAN A. JEFFREY;

h.  Any and all United States currency, funds, or other monetary instruments on deposit at Smith Barney, Account Numbers 559-153904 and 559-173459, formerly Account numbers 383-25091-15 and 383-47731-15, held in the name of PMD Investments LLC (the "Corrected Smith Barney Accounts");

7

i.    Any and all United States currency, funds, or other monetary instruments on deposit at Morgan Stanley, Account Number 844-354504, formerly Account Number 06-78C3Z, held in the name of PMD Investments LLC (the "Corrected Morgan Stanley Accounts"); and

j.    Any and all United States currency, funds, or other monetary instruments on deposit at Fifth Third Bank, Account Number 7233463814, held in the name of Paul M. Daugerdas by Eleanor Spina Daugerdas Trust (the "Corrected Fifth Third Bank Account");

(a-g, collectively, the "529 Accounts").

On October 24, 2018, the Court entered a Second Amended Preliminary Order as to Certain Specific Properties, correcting the account description of the PMD Fidelity Account and Eleanor Fidelity Account, as follows:

a.    Any and all United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number X03-375152, held in the name of PMD INVESTMENTS LLC (the "Corrected PMD Fidelity Account"); and

b.    Any and all United States currency, funds, or other monetary instruments on deposit at Fidelity, Account Number Z46-623261, held in the name of ELEANOR SPINA DAUGERDAS TRUST U/A 05/23/85, formerly held in account number X03-315540 in the name of ELEANOR DAUGERDAS at Fidelity (the "Corrected Eleanor Fidelity Account");

### III.    The Current Petitions

#### A.    Paul Daugerdas's Petition Related to the 529 Accounts.

On October 23, 2018, Paul Daugerdas, filed a petition asserting an interest in the 529 Accounts as the purported "custodian and trustee" for the beneficiaries of the respective 529 Accounts, specifically, Nicole K. Daugerdas, Daniel W. Daugerdas, Michael P. Daugerdas, Alexander P. Jeffrey, Courtney M. Daugerdas, Eleanor M. Daugerdas, and Megan A. Jeffrey (collectively, the "Beneficiaries"). Daugerdas asserts that he opened the 529 Accounts for the purpose of meeting the qualified higher education expenses of the 529 Beneficiaries and that he

is not the owner of the 529 Accounts, but rather is acting as the custodian and trustee for the Beneficiaries of the 529 Accounts.  (529 Petition at 1).

Daugerdas further claims that the Government cannot demonstrate that the 529 Accounts were funded solely with criminal proceeds. Instead, he asserts that the J&G accounts that funded the 529 Accounts were comprised of proceeds of his tax shelter scheme that were inextricably commingled with clean funds prior to being disbursed to the accounts Daugerdas controlled. (529 Petition at 3-4).  Daugerdas thus asserts that the Government can only forfeit the 529 Accounts as the defendant's substitute assets pursuant to Title 21, United States Code, Section 853(p). Under these circumstances, Daugerdas argues, the Beneficiaries' interest in the 529 Accounts vested prior to the filing of the November 19, 2009 Indictment that identified the 529 Accounts and therefore that the Beneficiaries' interest in the 529 is superior to the Government's interest.  (D.E. 56).

## B.    The Eleanor Daugerdas Petition.

On December 6, 2018, Eleanor Daugerdas filed the instant petition, individually and as sole member of PMD Investments, LLC and WBLG Walworth, LLC, asserting an interest in the following assets based on an assignment from Paul Daugerdas: Williams Bay Property, Corrected Smith Barney Accounts, Corrected Morgan Stanley Accounts, Corrected Fifth Third Bank Account, Corrected PMD Fidelity Account, and Corrected Eleanor Fidelity Account (collectively, the "Assigned Properties").  The Eleanor Petition asserts that her interest in the Subject Properties vested at the time of her assignment on or about December 31, 2002. (Eleanor Petition ¶ 5 (the "Assignment")). However, the Eleanor Petition contains no allegations that challenge the affirmative assertions of fact set forth in the June 18, 2014 Declaration of Special Agent Christine Mazzella (the "Mazzella Declaration"), which formed the basis for the

9

Preliminary Order.  (*See* D.E. 826).  Nor does the Eleanor Petition plead any facts to rebut the Government's proof that J&G sent Daugerdas approximately $91 million in fee income tied to the tax shelter scheme to the PMD Chartered JP Morgan Chase Account 5300123307 (the "PMD 3307 Account").

Instead, the Eleanor Petition asserts, without factual support but rather "upon information and belief" that the proceeds of Daugerdas' tax shelter scheme were inextricably commingled in the J&G Accounts with untainted client fees prior to J&G making distributions to the defendant controlled PMD 3307 Account.  (Eleanor Petition ¶ 21, 22).  The Government could not, she claims, forfeit those distributions as proceeds of Daugerdas's tax shelter scheme, and could only forfeit the Assigned Properties as substitute assets of the defendant pursuant to § 853(p). (Eleanor Petition ¶¶ 22, 24).  Eleanor then asserts that since she acquired her interests in the Assigned Properties prior to the filing of the June 23, 2009 Indictment alleging the tax fraud scheme perpetrated by her husband, (D.E. 14), that her interest vested prior to the Government's interest in substitute assets and is therefore superior.

## ARGUMENT

For the reasons set forth below, the Court should dismiss the 529 Petition because Paul Daugerdas's claims are barred by the law of the case doctrine and the Beneficiaries of the 529 Accounts lack standing.  The Eleanor Petition should likewise be dismissed for failure to state a claim because even accepting her conclusions of law as true, it fails to put forth plausible facts that the criminal proceeds were commingles or that they constitute substitute assets, and, even if she could make out allegations of substitute assets, her interest in the Assigned Properties is inferior to the Government's interest in any event.

## I.      Applicable Law.

Title 21, United States Code, Section 853(n) allows a third-party to "petition the court for a hearing to adjudicate the validity of [her] alleged interest in [criminally forfeited] property." 21 U.S.C. § 853(n)(2).  The burden is on the petitioner to establish an interest in the property, superior to the interest of the Government, by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6); *see also United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir. 1997) ("If the petitioner establishes by a preponderance of the evidence that it has a superior legal interest in the property than the Government, who, for the purpose of this hearing, stands in the defendant's shoes, the court will amend the order of forfeiture accordingly.").

Section 853(n)(6)(A) provides that relief from forfeiture shall be provided if the petitioner establishes by a preponderance of evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section

There are only two ways that a third party can show a valid interest in property subject to forfeiture:  The petitioner "must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to the forfeiture,' 21 U.S.C. § 853(n)(6)(A), or (b) be a 'bona fide purchaser for value' of the property who was 'reasonably without cause to believe that the property was subject to forfeiture' at the time of purchase, *id.* § 853(n)(6)(B)." *Pacheco*, 393 F.3d at 353.

11

Federal Rule of Criminal Procedure 32.2(c)(1) authorizes the Government to move to dismiss a petition for failure to state a claim, and such motions are governed by the same standards applicable to motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b).  *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). Under Rule 12(b)(6), a petition should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Motions to dismiss pursuant to Rule 12(b)(6) must be granted if the complaint does not "contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

The Court need not accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.")). The Court should consider not only the facts alleged in the petition, but also "documents attached as exhibits or incorporated by reference in the [petition] and matters of which judicial notice may be taken."  *Samuels v. Air Trans. Local,* 992 F.2d 12, 15 (2d Cir. 1993).

## II.    The 529 Petition Should be Dismissed on Standing Grounds.

### A.    Claims by Paul Daugerdas are Barred by Law of the Case.

As this Court and the Second Circuit have already held in response to prior arguments made by Paul Daugerdas, payments to the PMD Accounts represented the proceeds of Daugerdas's tax fraud scheme.  November 7 Order, p. 5; *Daugerdas*, 892 F.3d at 551; *see also*; June 25, 2014 Tr. at 12:8-9 (D.E. 839).

12

While the Second Circuit's remand granted Eleanor Daugerdas the opportunity to litigate whether distributions to Paul Daugerdas constitute criminal proceeds on due process grounds, the Circuit did nothing to revive any claims by Paul Daugerdas.  *Daugerdas*, at 558.   Any petition by Paul Daugerdas at this time is therefore barred by the law of the case doctrine.  The law of the case doctrine has two distinct, but related, components.  First, under what is more commonly known as the "mandate rule," a defendant is barred from raising "issues previously waived by the defendant or decided by the appellate court."  *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  Second, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise."  *Id.* (internal quotation marks and citations omitted). *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  Paul Daugerdas is therefore barred from bringing any claims on his own behalf.

### B.    Because Paul Daugerdas is the Owner of the 529 Accounts, the 529 Petition Should be Dismissed.

Recognizing the insurmountable hurdle to any claim by Paul Daugerdas himself, the 529 Petition strains to fashion itself as a claim by Paul Daugerdas in his role as "custodian" of the 529 Accounts he created for the benefit of others.  Because Paul Daugerdas is the party with a legal interest in any 529 Account – as he has repeatedly asserted in prior proceedings in this case -- the Beneficiaries of the 529 Accounts lack standing to submit a claim, and the 529 Petition should be dismissed.

#### 1.    Applicable Law.

In order to proceed with a claim, a petitioner must assert an interest in specific property. *See United States v. Ribadeneira*, 105 F.3d 833, 835-36 (2d Cir. 1997) (per curiam) (general

13

creditors have no standing in ancillary proceeding because they have no interest "in" specific

forfeited property; section 853(n) requires petitioners to demonstrate "an interest in a particular,

specific asset, as opposed to a general interest in an entire forfeited estate or account").  That is,

in order to contest the forfeiture, a petitioner must establish that he has a "legal interest in" the

property, as required by § 853(n)(2).  This subsection states, in part:

> Any person, other than the defendant, asserting a legal interest in
> property which has been ordered forfeited to the United States
> pursuant to this section may . . . petition the court for a hearing to
> adjudicate the validity of this alleged interest in the property.

21 U.S.C.§ 853(n)(2).

Section 853(n)(3) identifies certain requirements that a verified petition must satisfy to

assert an interest in forfeited property:

> The petition shall be signed by the petitioner under penalty of
> perjury and shall set forth *the nature and extent of the petitioner's
> right, title, or interest in the property, the time and circumstances
> of the petitioner's acquisition of the right, title, or interest in the
> property*, any additional facts supporting the petitioner's claim,
> and the relief sought.

21 U.S.C. § 853(n)(3) (emphasis supplied). The requirements under § 853(n)(3) that the

petitioner specify the nature and extent of his alleged interest, and the time and circumstances of

his acquisition of the alleged interest, are compulsory, and failure to satisfy the statutory

requirements is grounds for dismissal without a hearing.  *See, e.g., United States v. King*, No. 10

Cr. 122 (JGK), 2010 WL 4739791, at *4 (S.D.N.Y. Nov. 12, 2010) (in context of interlocutory

sale of horses that would be forfeitable to the Government, petitioner failed to come forward

with evidence of nature and extent of legal ownership of or interest in the horses, as required

under § 853(n)(3)); *United States v. Capoccia*, No. 1:03-CR-35-1, 2010 WL 1753391, at *3 (D.

Vt. Apr. 29, 2010) (conclusory statement that "the money sought to be forfeited by the

14

government belongs to me," and petitioner's failure to sign petition under penalty of perjury, were insufficient to establish statutory standing and provided additional basis for dismissing petition).

A property interest can be demonstrated in a variety of ways, but courts generally look to indicia of dominion and control such as possession, title and financial stake. This ensures that claimants have at least some actual connection to the property in question; they cannot be only bare title holders. *See United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 527 (2d Cir. 1999); *U.S. v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft, Venezuelan Registration No. YV219T, Serial UC118*, 619 F.3d 1275, 1278-79 (11th Cir. 2010); *United States v. $41,352 U.S. Currency*, 2015 WL 5638211 (W.D.N.Y. Sept. 24, 2015) (claim must state more than a bald assertion of ownership in defendant property, and will be dismissed unless complaint establishes sufficient information for court to determine that risk of fraudulent claim is not present).

> **2.      The Beneficiaries of the 529 Accounts Lack Standing
> because 529 Accounts are Property of the Account Holder,
> Not of the Beneficiary.**

The Internal Revenue Code exempts qualified tuition programs from taxation as provided in Title 26 and defines a qualified tuition program as "a program established and maintained by a State or agency or instrumentality thereof or by 1 or more eligible educational institutions...." 26 U.S.C. § 529(a)-(b). There are two types of qualified tuition programs: a prepaid tuition plan or a college savings plan.  *See* 26 U.S.C. § 529(b)(1)(A). As the U.S. Securities and Exchange Commission notes in one of its publications, "[a]ll fifty states and the District of Columbia sponsor at least one type of 529 plan." *See* http://www.sec.gov/investor/pubs/intro529.htm (last visited March 18, 2019). Congress created the tax exemption found in 26 U.S.C. § 529 to

encourage taxpayers to save for future college expenses. *See* S. Rep. No. 104–281 at 105–107 (1996), U.S. Code Cong. & Admin. News 1996, pp. 1474, 1579–81 (stating the reason for the change in the law is to "clarify the tax treatment of State-sponsored prepaid tuition programs and educational savings programs in order to encourage persons to save to meet post-secondary educational expenses").

"Although 529 plans are treated as gifts for purposes of federal gift tax, the account remains the property of the account holder, who has full access to withdraw funds, change the account beneficiary, and so forth, and not the property of the beneficiary." *Taylor v. Taylor,* 2013 U.S. Dist. LEXIS 39277, 2013-1 U.S. Tax Cas. 1183290, at *16 (N.D.N.Y. 2013); *see also In re Addison*, 540 F.3d 805, 819-20 (8th Cir. 2008) (finding that 529 account was not irrevocable gift to beneficiary where funds could be "re-vested" in the settlor of the account, albeit with a tax penalty"); *In re Bourguignon*, 416 B.R. 745, 749-51 (Bankr. D. Idaho 2009) (finding debtor had legal interest in account where debtor retained control over how and when assets were used, could terminate account at any time, and was entitled to receive distribution,); *see also* Susan T. Bart, *The Best of Both Worlds: Using a Trust to Make Your 529 Savings Accounts Rock,* 34 ACTEC J. 106, 111 n. 31 (2008) ("[U]nless the beneficiary is the account owner, the beneficiary has only a mere expectancy, and does not have any property interest to transfer.").

*United States v. Kieffer*, involving the garnishment of 529 accounts on the basis of a criminal restitution judgment against a defendant, is instructive. *See United States v. Kieffer*, 2010 WL 2231806 (D.N.D. Apr. 28, 2010). In *Kieffer*, the defendant argued that he lacked sufficient interest in the property to be garnished as the accounts were set up to benefit his children and therefore the funds in the 529 accounts belonged to his children and not him. *Kieffer*

16

at *7.  The District Court held that under the prototypical 529 college savings plan, the parent-owner has more than sufficient interest in "property or rights to property" to support a garnishment pursuant to § 3613(a), regardless of whether the determination of what constitutes a sufficient property interest is a question of federal law, state law, or some combination of the two. *Id.* at *7.  The *Kieffer* court found that notwithstanding certain potential tax penalties, the adult account holder retains the power to change the account beneficiary, roll funds over into another 529 account, withdraw funds for any purpose or close the account altogether and therefore retains an ownership interest in the account. *Id*. at *6.

Similarly, in *Securities and Exchange Commission v. Abdallah*, the district court held that funds deposited into 529 accounts during the course of defendant's fraud were an asset of the defendant account holder – not the beneficiaries – and therefore the 529 accounts were part of the receivership. *Sec. & Exch. Comm'n* v. *Abdallah*, No. 1:14 CV 1155, D.E. 236 (N.D. Ohio July 31, 2015). In *Abdallah*, the court, found *Kieffer* instructive in determining that the 529 account at issue was a "prototypical" 529 plan in which the account owner retained all control over the account. *Id*. at 6. Secondly, the court noted that under Ohio law, the defendant, as the account owner of the 529 account, had the authority to select or change the beneficiary of the account, roll over funds to another qualified tuition program, or close the account for any reason. *Id.* at 7-8 (citing Ohio Rev. Code Ann. § § 3334.09-10). The court determined that since the defendant was listed as the account owner and had control over the funds the beneficiaries of the accounts did not have a property interest in the 529 accounts.  *Id.*

The 529 Petition has failed to set forth any facts that would indicate that the 529

Accounts[2] at issue are anything but the "prototypical" 529 accounts discussed in *Abdullah* and

*Kieffer* in that they do not convey any ownership interest to the Beneficiaries. The 529 Petition

asserts that the 529 Accounts here "were funded and established by Paul M. Daugerdas prior to

2002 as Internal Revenue Code Section 529 Qualified Tuition Program accounts for the purpose

of meeting the qualified higher education expenses of the designated beneficiaries of such

accounts." (*See* 529 Petition at 3).  Because Daugerdas acknowledges that he funded and is the

titled owner of the 529 Accounts, he concomitantly exercised dominion and control over the

funds in the account. As an account holder of the 529 Accounts, Daugerdas had the authority to

withdraw funds entirely or to even change the identified beneficiary of the account to another

individual.

Thus, while 529 Accounts are treated as qualified trusts for tax purposes, they are not in

fact trusts, but are simply accounts owned by the account holder.  Indeed, Paul Daugerdas'

claims that he is simply the "custodian" of the 529 Accounts is directly at odds with the position

he has taken at every other stage in this proceeding.  As the Court is well aware, Daugerdas

previously argued before this Court that he was the owner of the 529 Accounts and opposed the

---

[2]      While beyond the scope of this motion, Black Rock Student Advantage 529 plan – the plan provider for the 529 Accounts in this case – is a State of Ohio-sponsored educational savings programs. Chapter 3334 of the Ohio Revised Code: College Savings Program; Variable College Savings Program provides, in pertinent part: "The contributor of a variable college savings program account may … terminate the account for any reason[.] The contributor may receive an amount equal to the account balance, less any applicable administrative fees." ORC § 3334.10(B). "'Contributor' means a person who signs a variable college savings program contract with the Ohio tuition trust authority and contributes to and owns the account created under the contract." ORC § 3334.01(R). *See* https://www.blackrock.com/us/individual/literature/forms/529-collegeadvantage-program-description-us.pdf

entry of the June 26 POF, which sought the forfeiture of all his right, title and interest in, among other things, the 529 Accounts. (D.E. 831). Additionally, in Paul Daugerdas' Motion for a Monsanto Hearing, he described various assets, including the 529 Accounts, as "Mr. Daugerdas' funds, or funds that might otherwise have been available to him" that the Government had restrained. (D.E. 63, p. 3). If Paul Daugerdas actually believed that he was not the owner of the 529 Accounts, and instead they were controlled by the Beneficiaries, he would not have claimed access to use the funds for his own benefit then there would have been no reason for the 529 Accounts to be included in his *Monsanto* application to use his restrained assets to retain counsel. *Id* at 4.

Paul Daugerdas is the owner of the 529 Accounts, and the Beneficiaries have no ownership interest in them.  The Beneficiaries therefore lack standing to assert a claim for the 529 Accounts in an ancillary proceeding. Accordingly, the 529 Petition should be dismissed for lack of standing.  *See* 21 U.S.C. § 853(n)(6); *see also Ribadeneira*, 105 F.3d at 834; *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015).

### 3.   Paul Daugerdas Cannot Assert an Interest on Behalf of the Beneficiaries.

To the extent the Beneficiaries wished to assert their own interest in the 529 Accounts, they were permitted to do so.  While Paul Daugerdas indicates he has filed the 529 Petition on behalf of the Beneficiaries of the 529 Accounts, he has failed to set forth any factual basis that he has authorization to do so.  Section 853(n)(2) makes it clear that the defendant cannot contest the forfeiture in the ancillary proceeding by filing claims on behalf of third parties. *See United States v. Bradley*, 882 F.3d 390, 392 (2d Cir. 2018); *United States v. Grigsby*, 2016 WL 1056560, *6 (D. Kan. Mar. 16, 2016) (holding that after sentencing and the forfeiture of his interest in

19

property, a defendant has no standing to challenge the forfeiture on behalf of third parties); *United States v. Miller*, 26 F. Supp. 2d 415, 432 (N.D.N.Y. 1998) (defendant lacks standing to object to pretrial restraining order on ground that property belongs to third party); *See also, United States v. Bennett*, 147 F.3d 912, 914 (9th Cir. 1998) (defendant, who is not the custodial parent and has not been made legal guardian under state law, may not file claim on behalf of his minor child).  If the Beneficiaries had an actual interest in the 529 Accounts, Paul Daugerdas has not presented any legal basis why any one of the individual Beneficiaries could not have personally objected to the Government's forfeiture by filing a petition asserting an interest in the 529 Accounts.[3]  Without any such evidence, Daugerdas has no standing to challenge the forfeiture on behalf of third parties and the 529 Petition should be dismissed on this basis.

**III.     The Eleanor Petition Should be Dismissed for Failure to Allege a Cognizable Interest under 853(n)(6)(A).**

As the Second Circuit noted in its remand order, the Eleanor Petition could only survive a motion to dismiss if she could (1) plead additional facts supporting her conclusory allegation that the Assigned Properties were derived from proceeds inextricably commingled with untainted funds, and (2) plead facts to rebut the seemingly obvious conclusion – consistent with this Court's prior rulings – that any fees Paul Daugerdas received from J&G were criminal proceeds.  Because the Eleanor Petition has fails on both grounds, it should be dismissed.

**A.     The Eleanor Petition Still Lacks Factual Allegations of Commingling.**

The Eleanor Petition's unsupported, conclusory allegations that the payments from Daugerdas' tax shelter clients were "commingled" with clean funds fail to plausibly state a claim.  (*See* Eleanor Petition ¶¶ 19-22).  Courts have held that pleadings based upon information

---

[3]     At the time Paul Daugerdas filed the 529 Petition none of Beneficiaries were minors.

and belief are insufficient where, as here, a party pointed to no information that would render her statements anything more than speculative claims or conclusory assertions. *See Williams v. Calderoni,* No. 11 Civ. 3020(CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012); *Jaffe v. Capital One Bank,* No. 09 Civ. 4106, 2010 WL 691639, *4 (S.D.N.Y.2010) (a "hunch ... does not amount to a claim to relief that is plausible on its face."); *Munoz-Nagel* v. *Guess, Inc.*, No. 12-CV-1312 ER, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (finding plaintiff failed to point to any information that would render her "belief" that younger applicants were hired over her anything more than a conclusory assertion). "Conclusory pleadings on 'information and belief' are inadequate as a matter of law" to survive a motion to dismiss. *Lesavoy,* 304 F.Supp.2d at 527 (quoting *Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.,* No. 95 Civ. 8450, 1996 WL 732634, at *5 (S.D.N.Y. Dec.19, 1996) (dismissing complaint with conclusory and unsupported allegations based upon "information and belief")). However, allegations pled on "information and belief" are proper if "accompanied by a statement of the facts upon which the belief is founded." *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.,* No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan.23, 1985); *Prince* v. *Madison Square Garden*, 427 F. Supp. 2d 372, 384–85 (S.D.N.Y. 2006)(although the plaintiff is entitled to plead facts upon information and belief, she has failed to accompany her allegations with a statement of the facts upon which the belief is founded).

Here, the Eleanor Petition suffers from the same pleading deficiency as the Original Petition, as she does not set forth any facts to support her assertion that the funds in the J&G Account were commingled with untainted funds prior to her receipt of the Assigned Properties. As the Second Circuit explicitly "emphasize[d]", the Eleanor Petition can only survive if it "plausibly alleg[es] facts supporting the conclusion that the Accounts were not forfeitable from

21

Paul as the 'proceeds' of his criminal conduct, but only as accounts containing money that, although in part fraudulently obtained, was then 'commingled with other property which cannot be divided without difficulty.'" *Daugerdas*, 892 F.3d at 558 (citing 21 U.S.C. § 853(p)(1)(E)). Here, the Eleanor Petition theorizes and assumes facts based not on personal knowledge but conjecture, and therefore fails to meet this burden.  (*See* Eleanor Petition ¶¶ 19-22). Since the Eleanor Petition fails to set forth any facts based on personal knowledge and instead asserts only general conclusions of law, the Eleanor Petition should be dismissed.

### B.    The Eleanor Petition Fails to State a Claim Because All Funds Transferred From J&G to Daugerdas Are Proceeds of the Offense.

Even if the Eleanor Petition adequately alleged commingling in the J&G Accounts, it would still fail to state claim because the payments from J&G to Paul Daugerdas (via PMD) were inherently proceeds of the offense regardless of the source of funds used to pay him.  The Second Circuit expressly recognized this issue, noting that "it is not self-evident why, if Paul's partnership compensation was entirely derived from such fees [related to his criminal conduct], his income could not itself be considered the proceeds of fraud. *Daugerdas*, 892 F.3d at  553. Indeed, it is clear that his compensation from J&G was proceeds of his fraud, as it was "property that a person would not have but for the criminal offense." *United States v. Grant*, No. S4 05 Cr. 1192, 2008 WL 4376365, at *2n.1 (S.D.N.Y. Sept. 25, 2008); *see also* November 7 Order at 5 (citing *United States v. Porcelli*, 865 F.2d 1352, 1363-65 (2d Cir. 1989)); *United States v. Dupree*, 2011 WL 3235637, at *8 (E.D.N.Y. July 27, 2011).

As this Court has twice held, the assets that constitute the Assigned Properties would not have been distributed to the Paul Daugerdas-controlled PMD accounts but for Daugerdas's massive tax fraud.  Once J&G distributed funds representing tax shelter income to the defendant,

all such funds constitute criminal proceeds and there are no legitimate funds to divide from the payments to Paul Daugerdas. *Daugerdas*, 892 F.3d at 551.  Put another way, Paul Daugerdas' receipt of payments from J&G represented payments for his fraudulent tax shelter scheme that he would not have received but for the crime.   The Eleanor Petition does not allege any facts suggesting that the payments to Paul Daugerdas were made for anything other than his criminal conduct. As such, the Eleanor Petition has failed to allege facts supporting its conclusion that the Assigned Properties are substitute assets rather than proceeds, and it should be dismissed.

**IV.    Alternatively, the Eleanor Petition Should be Dismissed Because the Government Would Have a Superior Interest Even If the Assigned Properties Were Substitute Assets.**

Even if Eleanor Petition's adequately alleged that the Assigned Properties were substitute assets rather than proceeds, which it does not, it would still fail to state a claim sufficient to demonstrate an interest in the Assigned Properties superior to the Government's interest, because the Government's interest would have vested prior to Eleanor's.

As the Court is aware, when the Government obtains a vested interest in an asset depends on the type of property being forfeited. *See* 21 U.S.C. § 853(c), (n)(2); *United States v. Peterson*, 820 F. Supp. 2d 576, 584-85 (S.D.N.Y. 2011). For *proceeds* of a criminal offense, 21 U.S.C. § 853(c) provides that the Government's interest vests retroactively on the date of the commission of the crime by the defendant.  Section 853(c) does not apply to the forfeiture of substitute assets under 21 U.S.C. § 853(p).  *See Honeycutt v. United States*, 137 S. Ct. 1626, 1633 (2017) (holding § 853(c) applies to tainted property only).

As the Second Circuit recognized, the timing of vesting of the Government's interest in substitute assets is unsettled, and district courts in the Circuit have reached varying conclusions. *Daugerdas*, 892 F.3d at 549*; see United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y.

23

2011) (vests upon return of grand jury indictment noticing forfeiture); *United States v. Kramer*, 2006 WL 3545026, at \*6–8 (vests, at the earliest, when defendant is convicted); *United States v. Jennings*, No. 5:98–cr–418, 2007 WL 1834651, at \*4 (N.D.N.Y. June 25, 2007) (vests upon entry of the order granting the motion to forfeit substitute assets); *United States v. Egan*, 654 Fed. App'x. 520, 521 & n.1 (2d Cir. 2016) (assuming that the government's interest vests, "at the very latest, upon entry of order of forfeiture concerning that property" but declining to decide precisely when vesting occurs).[4] The statutory scheme for the forfeiture of substitute assets makes clear, however, that they become forfeitable upon the occurrence of one of the enumerated events listed in Section 853(p)(1).  Put another way, it is the occurrence of an Section 853(p)(1) event that gives rise to the Government's right to forfeit the defendant's substitute assets.  The time of vesting of the Government's interest consistent with the governing statute, therefore, is the first moment on which such an event occurred.

The alternative times for vesting suggested in the district court decisions referenced above lack any similar grounding in the relevant statute or the statutory scheme.  Moreover, they necessarily lead to absurd results that are contrary to the purpose of that scheme: to make substitute assets available for forfeiture when a defendant has dissipated or concealed his crime proceeds.  A later vesting time would permit a criminal defendant (like Daugerdas) to thwart forfeiture of his criminal proceeds simply by commingling those proceeds with clean money and gifting the commingled funds to a family member (like Eleanor), even after becoming aware of

---

[4]      The Second Circuit did not resolve this question, instead ruling that "because Eleanor must overcome several hurdles before that question is reached, we leave it to the district court to take up that inquiry in due course." *Daugerdas*, 892 F.3d at 557 n.13.  As set forth above, Eleanor has failed to overcome those hurdles and so it is unnecessary to reach the question of when the Government's interests in substitute assets vests.

his imminent indictment, or even after being convicted.

As to the instant case, Section 853(p)(1)(E) provides for forfeiture of substitute assets once criminal proceeds have "been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1)(E).  If the crime proceeds in the J&G Account had been too commingled with untainted assets to divide, as Eleanor claims, then that commingling would necessarily have satisfied the requirement of Section 853(p)(1)(E).  Thus, the Government's interest in the Assigned Properties would have vested when the original funds were commingled, well before the funds were assigned to Eleanor in 2002.  Because the Eleanor Petition's allegations themselves demonstrate the Government's superior interest in the Assigned Properties, the Eleanor Petition should be dismissed.

## CONCLUSION

Because the Government has a superior interest in the Assigned Properties and 529 Accounts, the Eleanor Petition and the 529 Petition fail to state a valid basis for amending the Court's Preliminary Order of Forfeiture and should be dismissed.

Dated:  March 22, 2019
        New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By:     ____/s/_____
        Kiersten A. Fletcher
        Assistant United States Attorney
        (212) 637-2238

25